## CIRCUIT COURT OF STAFFORD COUNTY

Augustine Golf
Development Corp.

v.

Stafford County
Board of Supervisors

September 10, 1996

Case No. (Law) 95000597

BY JUDGE JAMES W. HALEY, JR.

The issue here for resolution is whether an owner has a statutory right to have his real property assessed at "open space" value, pursuant to a County ordinance permitting the same. The parties have stipulated all material facts, and each party has accordingly properly moved the court for summary judgment. Rule of Court 3:18. *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 82 S.E.2d 588 (1954).

Code § 58.1-3233, as here relevant, permits appropriately qualified "open space" land to be assessed at lesser value by the taxing authority when the land is:

3. (ii) subject to a recorded perpetual easement that is held by a public body . . . or (iii) subject to a recorded commitment entered into by the landowners with the local governing body . . . not to change the use to a non-qualifying use for a time period stated in the commitment of not less than four years nor more than ten years. Such commitment shall be subject to uniform standards prescribed by the Director of the Department of Conservation and Recreation pursuant to the authority set out in § 58.1-3240. Such commitment shall run with the land for the applicable period . . . .

Pursuant to Code § 58.1-3240 and Code § 10.1-104, which enumerates the powers of the Department of Conservation and Recreation, the Director of that Department promulgated "Standards for Classification of Real Estate as Devoted to Open-Space Use under the Virginia Land Use Assessment Law." Section 3 of those standards deals with agreements for "commitments" for open-space use under Code § 58.1-3233(3)(iii), quoted above, sets forth a form for "Open-Space Use Agreement," and requires that any such agreements "shall conform substantially" to that form.

Augustine Golf Development Corporation ("Augustine") is the owner and operator of a public golf course, clubhouse, and other amenities consisting of approximately 190 acres in Stafford County, Virginia.

The County has stipulated that this property is properly classified as "open-space" in accordance with Code § 58.1-3233 and the standards promulgated thereunder by the Director and is likewise in accordance with the "open-space" provisions of the then existing Stafford County land use plan and the ordinance permitting "open space" land use assessment.[1]

In the fall of 1994, Augustine prepared and tendered to the County an "Open-Space Use Agreement." This agreement substantially conforms with that promulgated by the Director.[2] The agreement covers the entire 190 acres owned by Augustine constituting the golf course, clubhouse, and other amenities. According to its terms, the "Agreement shall remain in effect for a term of ten (10) consecutive years."

The County declined to execute the agreement tendered by Augustine. The County concedes that had Augustine elected to record "a perpetual easement that is held by" the County devoted to open-space use, as authorized by Code § 58.1-3233(3)(ii), quoted above, the County would have no discretion in the matter, being required to accept the easement and grant open space tax assessment to the parcel so encumbered. However, the County maintains, when a property owner elects to proceed under Code § 58.1-3233(3)(iii), likewise quoted above, the County retains the discretion to accept or decline the proffered agreement. Augustine denies

---

[1] On December 12, 1995, the County abolished the open space land use ordinance. During the period of its existence, only one property, owned by the Isaac Walton League, had been so assessed. The County does not dispute that Augustine requested open space use classification during the period when the ordinance permitting the same was operative.

[2] Augustine is bound by the agreement it prepared and tendered, whether or not it substantially conforms to that form promulgated by the Director.

the County this discretion, arguing that the statute requires the County to accept the agreement upon its terms and accordingly grant it open space tax assessment for ten years.

"Words in a statute are to be construed according to their ordinary meaning, given the context in which they are used." *Patterson v. CSX Transportation*, 245 Va. 483, 487, 429 S.E.2d 215, 218 (1993). See also, *Loyola Fed. Savings v. Herndon*, 218 Va. 803, 805, 241 S.E.2d 752, 753 (1978); *Last v. Virginia State Bd. of Medicine*, 14 Va. App. 906, 421 S.E.2d 201 (1992). This maxim is likewise applicable to regulations promulgated pursuant to statutory authority. The use of definitions found in case law and dictionaries are an acceptable method of ascertaining that meaning. *Wackwitz v. Roy*, 244 Va. 60, 65, 418 S.E.2d 861, 865 (1992); *Commonwealth v. Orange-Madison Coop*, 220 Va. 655, 658, 261 S.E.2d 532, 534 (1980).

A review of the agreement tendered by Augustine, which is in substantial conformity with the form promulgated by the Secretary, is replete with language traditionally associated with contracts. For example, it is entitled an "agreement" between two parties, Augustine and the County. It recites that the owner "is willing [to] make a written recorded commitment . . ." and the County "is willing to extend the tax . . . on the basis of a use assessment . . . ." The proposed agreement recites that it "shall be effective *upon acceptance by the County*" (emphasis supplied). It contains signature spaces for execution by both Augustine and an appropriate County official.

> To constitute an agreement there must be a proposition by the one party and an acceptance by the other, which must be manifested by some appropriate act. *White v. Allen Kinston Motor Car Co.*, 69 Misc. 627, 126 N.Y.S. 150, 151. *Conservative Life Ins. Co. v. National Exchange Bank*, 118 W. Va. 44, 188 S.E. 755, 756 (1936).

In *Southern Ry. Co. v. Powell*, 124 Va. 65, 67, 97 S.E. 357, 358 (1918), the Supreme Court of Appeals defined "understanding" as "an agreement . . . anything *mutually* . . . agreed upon . . . ." (emphasis supplied). Agreement means "in harmony." *Blankenship v. Unemployment Compensation Commission*, 177 Va. 250, 252, 13 S.E.2d 409, 412 (1941). And harmony requires at least two voices. Simply stated, an agreement is a manifestation of mutual assent on the part of two or more parties as to the substance of a contract. Mutual assent is essential.

The agreement proposed by Augustine recites that each party "is willing" to act in a certain way. "Willingness" implies "unwillingness" and both contemplate a choice between the two.

"Acceptance" is:

> The taking and receiving of anything in good part, and as it were a tacit agreement to a preceding act, which might have been defeated or avoided if such acceptance had not been made. The act of a person to whom a thing is offered or tendered by another, whereby he receives the thing with the intention of retaining it, such intention being evidenced by a sufficient act.

Black's Law Dictionary, 6th ed. (1990), p. 12.

From the foregoing, the court concludes that the "open-space use agreement" tendered by Augustine was an offer to maintain its property as open space for a period of ten years, if the County was willing to accept that offer and in consideration thereof grant Augustine open-space tax assessment for that period of time. The County had the choice of accepting or rejecting the same. The court further finds that the language of Code § 58.1-3233(3)(iii), and the regulations promulgated thereunder, are plain and unambiguous and likewise grant the County the choice of accepting or rejecting Augustine's tendered agreement.

Accordingly, the motion for summary judgment in favor of the County is granted.